UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-cv-21961-ALTONAGA/TORRES

---------------------------------------------------------------------------- x
ALAN DERSHOWITZ,       :
                                     Plaintiff,       :
            - against -       :
NETFLIX, INC., et al.       :
                                  Defendants.       :
---------------------------------------------------------------------------- x

**DEFENDANTS' AMENDED NOTICE OF COMPLIANCE FOR
DISCOVERY HEARING (JANUARY 27, 2022)**

Defendants Netflix, Inc., Leroy & Morton Productions LLC, RadicalMedia LLC, Lisa Bryant and Joseph Berlinger (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this notice pursuant to Paragraph 3(c) of the Order Setting Discovery Procedures entered by the Honorable Magistrate Judge Torres. *See* Dkt. 46. Defendants will appear before Magistrate Judge Torres on January 27, 2022, at 11:30 a.m. to address the following issues:[1]

    1.    **Plaintiff's Insufficient Responses to Interrogatory Nos. 1 and 2.**

Status of the parties' pre-filing efforts:

Plaintiff brought this defamation case over his portrayal in a four-part docu-series *Jeffrey Epstein*: *Filthy Rich* (the "Series"). Most specifically, Plaintiff's Amended Complaint claims that the Series defames Plaintiff when addressing Virginia Giuffre's accusations that Plaintiff had sex with her six times while she was a minor. Am. Compl. ¶ 104. Plaintiff is only discussed,

---

[1] Defendants understand that Plaintiff plans to raise the scope of Defendants' objections to Plaintiff's document requests at that hearing as well.

referenced or interviewed for a total of 6 minutes and 30 seconds out of the nearly 4-hour series. That is, Plaintiff is only referenced, by his interview, others' interviews, or in photographs in less than three percent of the entire Series. The rest of the Series examines Jeffrey Epstein, and how he used his wealth and power to carry out his abuses.

On August 20, 2021, Defendant Lisa Bryant served her First Set of Interrogatories on Plaintiff. Interrogatory No. 1 asks Plaintiff to "[i]dentify each statement of fact in *Filthy Rich* that you contend is false and defamatory of you and for which you seek damages in this action." Interrogatory No. 2 asks Plaintiff to "[d]escribe in detail how each statement of fact identified in response to Interrogatory No. 1 is defamatory of you." Plaintiff served a lengthy response to Interrogatory No. 1 that failed to identify the exact words he is challenging in this lawsuit (as is required to recover damages for defamation). *See* source documents Ex. A, which has been provided to the Court.

In an attempt to resolve this issue, Defendants agreed to postpone Plaintiff's response to the Interrogatory until Defendants provided a transcript of *Filthy Rich* so that Plaintiff could identify the specific statements he alleged to be false and defamatory. In response, Plaintiff produced highlighted transcripts of the Series on December 31, 2021, but these responses only compounded the issue. Far from identifying "each statement in *Filthy Rich* that Plaintiff alleges to be defamatory and defamatory [of him]," which is a fundamental obligation of any defamation plaintiff, Plaintiff highlighted wide swaths of the transcript – page after page – including, for example his *own* statements (*e.g.*, "I was born to be a criminal defense lawyer") and factual news clips about the Jeffrey Epstein trial (*e.g.*, "Epstein pleaded not guilty.") and even statements from episodes that do not mention Plaintiff whatsoever. Since these statements go beyond the scope of Plaintiff's Complaint (which seeks liability arising from "[Virginia] Giuffre's false allegations

against Professor Dershowitz," Am. Compl. ¶ 105), and since the highlighted statements cannot (as a matter of either law or common sense) be false and defamatory of Plaintiff himself, Plaintiff's amended response continues to fail to respond to the Interrogatory.

Again, to try and resolve this issue, Defendants asked Plaintiff to supplement his response to Interrogatory No. 2 (describing how each statement identified in response to Interrogatory No. 1 is defamatory of Plaintiff), but Plaintiff refuses to do so. As it stands, Plaintiff's refusal to respond to the Interrogatories appears designed to frustrate Defendants' efforts to move for summary judgment on Plaintiff's claims. Plaintiff has still failed to identify the specific words at issue that are false and defamatory of him. Despite multiple meet and confers and email correspondence, the parties have been unable to resolve this issue.

2. **Plaintiff's Failure to Provide An Adequate Privilege Log**

<u>Status of the parties' pre-filing efforts:</u> On December 6, 2021, Plaintiff notified Defendants that his current privilege log "itemizes over half a million documents and will continue to grow." Nevertheless, Plaintiff provided Defendants with his current, and much smaller, privilege log "in its present state and without waiver (including with respect to the form, substance, or timing of subsequent logs)." Plaintiff has never provided Defendants with his final privilege log. And the log Plaintiff did provide is incomplete, unwieldly and fails to satisfy Plaintiff's burden of providing information sufficient to allow Defendants to evaluate Plaintiff's assertions of privilege.

To facilitate Defendants' review of Plaintiff's assertions of privilege, Defendants asked Plaintiff to provide a list of attorneys who appear on his log. In response, Plaintiff produced a list of <u>127 lawyers</u>, but it is unclear whether Plaintiff actually has an attorney-client relationship with the attorneys on his list (for example, the list includes a "family member," Jamin Dershowitz, who appears to be a lawyer for the Women's National Basketball Association, involved in negotiating

in player contracts).  There are also (at least) hundreds of entries purporting to describe emails that are subject to attorney-client privilege, but that do not include any attorneys on Plaintiff's "List of Attorneys."  Moreover, it appears that many other communications were sent to non-lawyer third parties – such as public relations professionals (*e.g.*, Mike Sitrick), or academic colleagues (*e.g.*, Harvard faculty liaison Maura Kelley), whose inclusion on the communications appears to waive any applicable privilege.  *See* Ex. H to the source materials provided to this Court.  Indeed, it appears the majority of Plaintiff's log was prepared for other litigations, and it is unclear the extent to which Plaintiff's counsel in this case has independently analyzed the privilege assertion for these documents.

Plaintiff's log also asserts that he is withholding dozens of "marital communications" that appear to be about Virginia Giuffre's allegations against Professor Dershowitz – which are the precise allegations that are at issue in this litigation.  But Plaintiff's initial disclosures list his wife as a witness for, among other issues, "non-economic damage suffered by Professor Dershowitz."  Thus, Plaintiff's prior communications with his wife about Ms. Giuffre's allegations against him are directly relevant to determine the extent to which Plaintiff's reputation was already tarnished by Ms. Giuffre's allegations long before *Filthy Rich* was distributed.  With respect to the marital privilege issue, Plaintiff has agreed to consider producing some withheld "marital communications" that relate to Plaintiff's alleged "non-economic damages," and Defendants will continue to work in good faith to resolve this portion of the privilege log issue before the parties' conference.

4882-0973-1842v.1 0094895-000117

### 3. Plaintiff's Attempt To Broaden the Scope of Discovery Is Improper[2]

As described in part 1, above, Plaintiff has brought this defamation case over the discussion of Virginia Giuffre's accusations against him in a Series about Jeffrey Epstein – not about him. Plaintiff alleges that Ms. Giuffre's accusations are false, and that Defendants acted with actual malice (*i.e.*, with actual knowledge or reckless disregard as to its falsity) in including the claims in the Series. Am. Compl. ¶¶ 103, 113. But the Series itself spans nearly four hours over four episodes. And Ms. Giuffre's accusations against Plaintiff – and his response – are only discussed in the final episode of the Series. Indeed, Plaintiff is mostly referenced in the Series because he was one of Mr. Epstein's attorneys. And, taken as a whole, Plaintiff is only discussed, referenced or interviewed for a total of 6 minutes and 30 seconds out of the nearly 4-hour series. That is, Plaintiff is only referenced, by his interview, others' interviews, or in photographs in less than 3 percent of the entire Series.

While Plaintiff sought open-ended discovery related to the entire production of the Series about Jeffrey Epstein, Defendants have generally agreed in discovery to produce documents that were made or obtained in the course of producing *Filthy Rich* **that relate to Plaintiff and/or Giuffre's allegations against Plaintiff**. Thus, any time anyone mentioned Plaintiff in an interview for the Series – Defendants have produced a redacted transcript which details just how Plaintiff was referenced. Defendants also produced the full transcript and video of their interview with Ms. Giuffre.

---

[2] Plaintiff's request is also untimely. S.D. Fl. L. R. 26.1(g)(1); Court's Order Dkt. 46 Rule 2. Defendants served their objections on November 19, 2022, but Plaintiff did not even raise any issue with Defendants' objections for 31 days – and then did so in an email seeking an email response ten days later. Ex. G to the source materials presented to the Court.

Now Plaintiff seeks to substantially broaden the scope of discovery by asking the Court to compel Defendants' production of documents that go well beyond any issue that is relevant to any claim or defense in this case, and to invade the privilege afforded to unpublished newsgathering material. *See, e.g.*, Plaintiff's RFP No. 8 ("*All* documents relating to Giuffre") and RFP No. 9 ("*All* documents relating to *Filthy Rich*). In his proposed order to this Court, Plaintiff seemingly seeks to narrow his request to any and all documents "that may bear on the credibility of Virginia Giuffre, her attorneys, or any of the other accusers who were interviewed as part of the mini-series." Plaintiff's Proposed Order. But even that narrowing is too broad – and extremely vague.

Preliminarily, Plaintiff's request should be denied as outside the scope of discovery permitted by the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). The request should also be denied because Plaintiff cannot and has not met his heavy burden of overcoming Defendants' newsgathering privilege.

A.  The Materials Sought By Plaintiff Are Not Relevant To This Litigation, and Not Proportional To the Needs of the Case.

Plaintiff cannot meet his burden of proving that the requested documents are relevant. *See Am. Fed'n of State, Cty. & Mun. Emps. (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 477 (S.D. Fla. 2011) ("[W]hen relevancy is not apparent, the burden is on the party seeking discovery to show the relevancy of the discovery request.") (citation omitted).

Relevancy is beyond "not apparent" here: this litigation is about a statement that Giuffre made about Plaintiff, and Plaintiff is seeking to compel the production of documents that have nothing to do with her claims. Plaintiff contends in his Notice of Compliance that he is entitled to *all* documents about *all* of the women who accused *Jeffrey Epstein* of sexual abuse. This makes no sense. Jeffrey Epstein is not the Plaintiff here – Alan Dershowitz is.

6

Plaintiff seems to think that Defendants may have "knowingly and intentionally failed to present" information about the credibility of other women's accusations against Mr. Epstein that because they were hypothetically "inconsistent with the overall narrative they wished to present." But that is not relevant here. Plaintiff must establish that Defendants published a false and defamatory statement about *him* and that they did so with "actual malice." Actual malice "is a subjective test, which asks whether the publisher *in fact* entertained serious doubts as to the truth of his publication." *Berisha v. Lawson*, 973 F. 3d 1304, 1312 (11th Cir. 2020) (internal citation and quotation marks omitted) (emphasis in original), *cert. denied*, 141 S. Ct. 2424 (2021). Importantly, "Plaintiff will not be permitted to establish actual malice by arguing to the jury that the film, as a whole, is defamatory, but will instead be required to identify specific defamatory statements and present evidence that each was made with actual malice." *Schiller v. Viacom, Inc.*, No. 1:15-cv-22129, 2016 WL 9280239, at *8 (S.D. Fla. Apr. 4, 2016) (emphasis in original). *See also Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987) (*en banc*) ("[D]efamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement.") (emphasis in original); *Baiul v. Disson*, 607 F. App'x 18, 20 (2d Cir. 2015) (plaintiff must prove that defendant "made each of the challenged statements with actual malice"), *aff'd sub nom. Baiul v. NBCUniversal Media, LLC*, 607 F. App'x 99 (2d Cir. 2015); *Church of Scientology Int'l v. Time Warner, Inc.*, 903 F. Supp. 637, 641 (S.D.N.Y. 1995) ("Court considers each allegedly libelous statement individually to determine whether a rational finder of fact could find actual malice by clear and convincing evidence.").

Thus, even assuming *arguendo* that Defendants had information that *should* have made them doubt Jeffrey Epstein's accusers (and, to be clear, there is *no* reason to believe they should have had these doubts), that is not relevant to Plaintiff's burden to show that Defendants *in fact*

had doubts as to *Giuffre's* accusation against *Plaintiff*. Since the documents sought by Plaintiff have no direct relationship to his claims, his proposed fishing expedition should be rejected.

B. The Material Sought By Plaintiff Is Privileged

Even if the documents sought by Plaintiff *were* relevant to any claim or defense in this action (and they are not), they would also be protected from disclosure under New York's shield law (N.Y. Civ. Rights Law § 79-h), as well as under the First and Fourteenth Amendments to the United States Constitution

The parties agree that the New York law controls the reporter's privilege question in this case. Pl.'s Notice at 3.[3] The New York Shield Law provides a privilege for professional journalists and newscasters for all unpublished news secured in the course of newsgathering activities. N.Y. Civ. Rights Law § 79–h(b), (c) ("§ 79–h"). The privilege is *absolute* with regard to materials "obtained under a promise of confidentiality." *Baker v. Goldman Sachs & Co.*, 669 F. 3d 105, 107 (2d Cir. 2012). As to other nonpublished information, the party seeking such discovery can only overcome the qualified privilege "by making 'a clear and specific showing that the news: (i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative

---

[3] Since both parties "assume that New York law controls [the reporter's privilege] issue, and such implied consent is sufficient to establish choice of law," Section 79-h should be applied here. *MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP*, 701 F. Supp. 2d 518, 532 (S.D.N.Y. 2010) (internal citations and modifications omitted), *aff'd*, 420 F. App'x 408 (2d Cir. 2011). Moreover, federal courts sitting in diversity apply state reporter shield laws. *See, e.g.*, *Baker*, 669 F. 3d at 108; *Gubarev v. BuzzFeed, Inc.*, No. 1:17-cv-60426, 2017 WL 6547898, at *1-2 (S.D. Fla. Dec. 21, 2017); *Giuffre v. Maxwell*, 221 F.Supp.3d 472, 475 (S.D.N.Y. 2016) (applying 79-h reasoning "[b]ecause this case concerns a state law claim that is in federal court because of diversity of citizenship, evidentiary and discovery privileges are governed by New York law," the state where the journalist is based). Plaintiff also recognizes that New York governs his underlying defamation claim, Am. Compl. ¶¶ 101, 102, and that his appearance release contained a choice of law provision stating that that this case is governed by New York law. *Id.* ¶ 55.

source.'" *Id.* (quoting § 79–h(c)). "To determine that unpublished news is either "critical or necessary" within the meaning of Section 79–h, there must be a finding that the claim for which the information is to be used ***virtually rises or falls*** with the admission or exclusion of the proffered evidence." *Id.* (emphasis added) (citation omitted). "The test is not merely that the material be helpful or probative, but whether or not . . . the action may be presented without it." *Id.* (internal quotation marks omitted).[4] *See also Perito v. Finklestein*, 51 A.D.3d 674, 675 (2008) ("[A] petitioner cannot merely show that [the information sought] would be useful, but rather that the defense could not be presented without it."); *Doe v. Cummings*, No. 91-346, 1994 WL 315640, at *1-2 (Sup. Ct. St. Lawrence Cty. Jan. 18, 1994) ("[M]ovants must show that the requested information is key to their proof at trial."); *People v. Novak*, 41 Misc. 3d 749, 755 (Sup. Ct. Sullivan Cty. 2013) (outtakes and reporter's notes of interview with criminal defendant shielded from disclosure where relevancy was "speculative").

Here, Plaintiff has failed to make the "clear and specific showing" necessary to overcome the qualified privilege, because – for the reasons set forth above – the material sought is relevant here, let alone "highly material relevant." And Plaintiff has not even tried to argue that his claims "virtually rise or fall" with the admission or exclusion of evidence that has nothing to do with Giuffre's statements regarding Plaintiff. At most, Plaintiff alleges that broader discovery may be

---

[4] This is consistent with the First Amendment privilege recognized by the Eleventh Circuit. *See, e.g.*, *United States v. Thompson*, No. 14-20522-CR, 2015 WL 1608462, at *1 (S.D. Fla. Apr. 10, 2015) ("Under well-settled first amendment law, news organizations are generally protected from compelled . . . disclosure of unpublished journalistic information" that can be overcome only in the "most exceptional cases.") (citing *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013); *see also Thompson*, 2015 WL 1608462, at *1 ("Overcoming the standard is a ***heavy burden*** and the standard must be met by clear and convincing evidence.") (emphasis added) (citation and internal quotation marks omitted).

9

"helpful or probative," but that is simply insufficient to invade the privilege. *Baker*, 669 F. 3d at 108.[5]

Plaintiff's argument that Defendants somehow waived the Section 79–h privilege is also unavailing. While it is true that Defendants agreed to a limited waiver as to documents that relate directly to Plaintiff or Giuffre's allegations about Plaintiff, the scope of that limited waiver does not extend to unpublished materials about other subjects.

Plaintiff contends without basis that Defendants waived the Section 79–h privilege by asserting in their Sixth and Seventh Affirmative Defenses that Plaintiff cannot demonstrate actual malice. *See* Pl.'s Notice at 3. But the actual malice issue in this case is whether Defendants had actual knowledge that *Giuffre's* allegations about *Plaintiff* were false or subjectively had doubts about her claims. As stated above, it simply does not follow that this somehow opens the door to discovery about other accusers or allegations about Jeffrey Epstein. But even if Defendants' affirmative defenses *were* broader than that (and they are not), affirmative defenses cannot give rise to a waiver of the newsgathering privilege. *See TheStreet.com, Inc. v. Carroll*, 20 So. 3d 947, 949 (Fla. 4th DCA 2009) (privilege not asserted as both a sword and a shield where the discovery in dispute related to a media entity's *affirmative defense* rather than "any claim or pleadings seeking affirmative relief").

Finally, Plaintiff's argument that the reporter's privilege does not apply when discovery is sought from a media defendant is simply wrong. *See, e.g.*, *Flynn v. NYP Holdings Inc.*, 235 A.D.2d 907 (3d Dep't 1997) (affirming denial of motion to compel from media defendant in libel case where plaintiff failed to overcome the Section 79–h privilege); *Gubarev*, 2017 WL 6547898, at *4

---

[5] Here, there is no dispute that Section 79-h is an absolute bar to disclosure of any newsgathering materials obtained from confidential sources.

(holding that plaintiff did not overcome qualified privilege afforded by Florida's reporter's privilege in case against media defendant). For these reasons, Plaintiff is not entitled to broaden the scope of Defendants' production here.

Pursuant to the Court's Paperless Notice of Hearing, the hearing will take place in person at the United States Courthouse, James Lawrence King Building, Courtroom 5 – Tenth Floor, 99 N.E. 4th Street, Miami, Florida. Dkt. 70.

## GOOD FAITH CERTIFICATION PER LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movants has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues. Moreover, Defendants will continue to try and resolve these issues with Plaintiff in a cooperative manner up until the date of the scheduled hearing and will promptly notify the Court of any resolution reached prior to the hearing.

Dated: January 25, 2022

    Respectfully submitted,

    DAVIS WRIGHT TREMAINE LLP
    **Rachel F. Strom**
    Rachel F. Strom (*admitted pro hac vice*)
    1251 Avenue of the Americas, 21st Floor
    New York, NY 10020-1104
    (212) 489-8230 Phone
    (212) 489-8340 Fax
    rachelstrom@dwt.com

    and

    Deanna K. Shullman
    Florida Bar No. 514462
    Minch Minchin
    Florida Bar No. 1015950

    SHULLMAN FUGATE PLLC

4882-0973-1842v.1 0094895-000117

          2101 Vista Parkway, Suite 4006
          West Palm Beach, FL 33411
          Telephone: (561) 429-3619
          dshullman@shullmanfugate.com
          mminchin@shullmanfugate.com
          *Attorneys for Defendants Netflix, Inc., Leroy & Morton Productions LLC, RadicalMedia LLC, Lisa Bryant and Joseph Berlinger*